This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41282

STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,

Petitioner-Appellee,

v.

MIRANDA M. and KRISTOPHER M.,

Respondents-Appellants,

IN THE MATTER OF TRAVIS S.,

Child.

APPEAL FROM THE DISTRICT COURT OF QUAY COUNTY
Albert M. Mitchell, District Court Judge

Children, Youth & Families Department
Mary McQueeney, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Lindsey Law Firm, L.L.C.
Daniel R. Lindsey
Clovis, NM

for Appellants

Romero Law Firm, L.L.C.
Dave Romero, Jr.
Las Vegas, NM

Guardian Ad Litem

## MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}**    Respondents Miranda M. (Mother) and Kristopher M. (Father) (collectively, Parents) appeal the district court's adjudication that Child was neglected by Parents, pursuant to NMSA 1978, Section 32A-4-2(G)(2) (2018, amended 2023). After careful review of the record, we agree with Parents that the finding of neglect is not supported by clear and convincing evidence in the record. We, therefore, reverse.

## BACKGROUND

**{2}**    In February 2023, the Children, Youth and Families Department (CYFD) took Child and his younger brother (Brother) (collectively, Children) into custody and filed a petition alleging abuse of Children by Father and Mother, pursuant to Section 32A-4-2(B)(1); abuse of Children by Father, pursuant to Section 32A-4-2(B)(2) and (5); and neglect of Child by Mother based on her failure to take reasonable steps to protect Child from Father's abuse, pursuant to Section 32A-4-2(G)(3). Following an adjudicatory hearing, the district court found that CYFD had failed to prove by clear and convincing evidence that Brother was either abused or neglected. As to Child, the district court found that CYFD had failed to satisfy its burden of proving by clear and convincing evidence that the incidents involving abuse by Father of Child actually occurred. The district court instead concluded that Child was neglected by Parents because Parents failed to provide the care the court found was necessary to address Child's "mental health struggles." Parents appeal solely and jointly from the district court's adjudication of neglect as to Child.

**{3}**    At the adjudicatory hearing, the district court heard testimony from a family multisystemic therapist who had treated Mother and Child, a CYFD investigator, Child's school bus driver, Child's teacher, Child's former mental health counselor, Mother, and Father. Video recordings of forensic interviews with Children were also admitted into evidence and reviewed by the district court. We note that, contrary to our appellate rules, the parties have not provided this Court with the video recording of these forensic interviews even though they were introduced into evidence at the adjudicatory hearing. *See* Rule 12-212(A) NMRA.

**{4}**    Child was twelve years old when he was taken into CYFD custody. It was undisputed that Child had a history of mental illness beginning at the age of seven, when he was hospitalized for five days following an incident of aggression against Brother. During his hospital stay, Child was diagnosed with Attention Deficit Hyperactivity Disorder, Disruptive Mood Dysregulation Disorder, and Oppositional Defiant Disorder and was prescribed medication. Mother was told upon Child's discharge that Child should see a therapist weekly.

**{5}** Mother testified that the medication, with some adjustments, continued to work well for three years. When Child was ten years old, the effectiveness of the medication began to diminish. Child's aggression heightened to the point where Mother called police approximately ten times to respond to Child's aggressive behavior toward Mother or Brother. Father was away from home working as a medical transport pilot during much of this time.

**{6}** In October 2021, Child began seeing the licensed mental health counselor who testified at the adjudicatory hearing. This therapy continued until "it was decided [Child] needed a higher level of care and therapy." Parents accepted this recommendation and Child started multisystemic therapy in January 2023 just weeks before CYFD took Child into custody. The mental health counselor did not have a current release and the court excluded her testimony about the substance of her therapy with Child.

**{7}** Children were brought into CYFD custody when Child reported to a CYFD investigator in February 2022 that Father was violent towards him, and Mother failed to intervene when this abuse occurred. Child repeated his allegations of abuse by Father in a video-recorded forensic interview, viewed by the district court.

**{8}** The only testimony establishing physical abuse that did not originate in a statement made by Child was that of the multisystemic therapist. She testified that Mother told her that Child's and Father's relationship was strained, that Father sometimes yelled at Child, and that there was some pushing she was aware of. Mother also told the therapist that she turned and walked away when this happened because if she intervened it would make things worse.

**{9}** Mother testified that Child often lied and that he thrived off attention his lies engendered. A school bus driver, a teacher, and Child's former therapist (from October 2021 to January 2023), testified that Child had a reputation for dishonesty and that they had never seen injuries on Child's body.

**{10}** Based on this record, the district court concluded that CYFD had failed to prove by clear and convincing evidence that the physical abuse by Father alleged by Child actually occurred. The fact that the district court rejected Child's view of events establishes that the district court did not find Child's disclosures credible. Despite finding that CYFD had failed to prove the physical abuse of Child by Father, which was also the foundation of CYFD's complaint of neglect by Mother for failing to stop the abuse, the district court found that a "viable issue" remained as to whether there was clear and convincing evidence of neglect based on Parents' failure to provide sufficient parental care and specialized treatment for what it found was a child with significant mental illness. After hearing closing arguments from both parties and the guardian ad litem, the district court concluded that Child "is without proper parental care and control . . . or medical or other care or control necessary for the child's well-being," pursuant to Section 32A-4-2(G)(2), based on what the court found was the failure of Parents "to take sufficient measures to address [Child's] mental health struggles."

**DISCUSSION**

**{11}** In its answer brief, CYFD first argues that Parents failed to properly appeal from the district court's final judgment. We address this issue first. Parents' notice of appeal states they are appealing from the court's dispositional order rather than from the district court's adjudicatory order. We do not agree that this error in Parents' notice of appeal deprives us of jurisdiction. In our recent decision in *State v. Jenkins*, 2024-NMCA-019, 542 P.3d 835, we held that a technical error in a notice of appeal does not deprive this Court of jurisdiction "as long as [the document] substantially complies with and provides the information required by Rule 12-202(B) [NMRA]." *Jenkins*, 2024-NMCA-019, ¶ 8. The sole deficiency CYFD alleges in the notice of appeal is Parents' failure to identify and attach the adjudicatory judgment to the notice. In *Jenkins*, where a docketing statement was filed in place of a notice of appeal without a copy of the judgment appealed from attached, we concluded that this was a technical error and, as such, was not jurisdictional. *Id.* Thus, "if the intent to appeal a specific judgment fairly can be inferred from the notice of appeal and if the appellee is not prejudiced by any mistake," the error will not deprive this Court of jurisdiction. *Id.* (internal quotation marks and citation omitted). Finding Parents' intent to appeal the adjudication of neglect clear, we proceed to the merits.

**{12}** Parents argue that the district court's finding that they failed to provide the therapy, psychiatric services, and care required to address Child's mental health needs was not supported by clear and convincing evidence in the record. Section 32A-4-2(G)(2) defines a "neglected child" as one "who is without proper parental care and control or subsistence, education, medical or other care or control necessary for the child's well-being because of the faults or habits of the child's parent, . . . or the failure or refusal of the parent, . . . when able to do so, to provide them." To make a finding of neglect under Section 32A-4-2(G)(2), "[t]he district court must have been presented with clear and convincing evidence of [Parents'] culpability through intentional or negligent disregard of Child's well-being and proper needs." *See State ex rel. Child., Youth & Fams. Dep't v. Amanda H.*, 2007-NMCA-029, ¶ 21, 141 N.M. 299, 154 P.3d 674.

**{13}** "For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Child., Youth & Fams. Dep't v. Shawna C.*, 2005-NMCA-066, ¶ 7, 137 N.M. 687, 114 P.3d 367 (internal quotation marks and citation omitted). "We employ a narrow standard of review and do not re-weigh the evidence." *Amanda H.*, 2007-NMCA-029, ¶ 19. "Rather, we review to determine whether, viewing the evidence in the light most favorable to the prevailing party, the fact[-]finder could properly determine that the clear and convincing evidence standard was met." *Id.*

**{14}** Parents contend that the court's finding that "Parents have failed to take sufficient measures to address [Child's] mental health struggles" is not supported by clear and convincing evidence in the record of the adjudicatory hearing. We agree and explain.

**{15}**     Because the sole allegation of neglect in CYFD's abuse/neglect petition was that Mother failed to intervene in Father's repeated, severe physical abuse and cruel punishment of Child, the evidence at the adjudicatory hearing focused on establishing that the abuse had occurred, and that Mother failed to intervene to protect Child from further harm by Father. After finding that CYFD had failed to meet its burden of establishing abuse by Father, the district court pivoted to considering whether Parents had provided adequate mental health treatment to address Child's escalating needs. Because of this novel departure from the allegations advanced by CYFD, the evidence in the record about the treatment provided to Child and its adequacy was unsurprisingly sparse. But it does establish that efforts were made by Parents to address the urgent and ongoing mental health needs of Child. It fails to include any evidence that recommended treatment was not provided by Parents. Mother testified that Parents were instructed upon Child's discharge from the hospital at age seven to provide him weekly therapy, and to both administer prescribed medications and follow up with psychiatrists to determine whether adjustments to the medication were needed. Mother testified about following this advice and providing this care. There was testimony about Child's participation in weekly therapy with a mental health counselor from 2021 to 2023. When a higher level of therapy was recommended by CYFD in December 2023, Parents provided that therapy. There was no testimony by the multisystemic therapist or by the CYFD investigator about recommended therapy or medication that Parents failed to provide.

**{16}**     The district court includes in its judgment only a single conclusory finding regarding the provision of such care. It does not disclose the evidence it relied on to find that Parents had failed to provide adequate medical and mental health care in response to Child's escalating behavior. To the extent the district court relied on the court's impression of Child's needs based on its review of Child's forensic interview, this does not constitute clear and convincing evidence in the record either as to Child's psychiatric needs—something that would have required expert testimony—nor is it clear and convincing evidence concerning the actions taken by Parents to provide mental health services given the court's determination that Child was not credible. Because there is no reliable evidence in the record as to either of these essential questions—Child's mental health needs or the efforts made and services provided by Parents—CYFD did not carry its burden of proving neglect in the provision of mental health care by clear and convincing evidence.

**CONCLUSION**

**{17}**     For the foregoing reasons, we reverse the district court's adjudication of neglect.

**{18}**     **IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JACQUELINE R. MEDINA, Judge**